FILED

12/03/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2020

**THOMAS MCLAUGHLIN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County
Nos. 41000644, CC2015-CR-1266     William R. Goodman, III, Judge**

———————————

**No. M2019-02306-CCA-R3-PC**

———————————

The petitioner, Thomas McLaughlin, appeals the denial of his petition for post-conviction relief, which petition alleged that he was deprived of the effective assistance of counsel at a revocation hearing.[1]  Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Thomas McLaughlin.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Lee Willoughby, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Because the trial record for the petitioner's underlying convictions is not included in the record on appeal, we glean the following facts from the post-conviction court's written order denying relief.  In November 2012, the petitioner pleaded guilty to three counts of the sale of a Schedule II controlled substance and one count of possession with intent to sell a controlled substance.  The trial court sentenced the petitioner to eight years' probation.  The petitioner violated the terms of his probation in April 2014 and March 2016, and the trial court ordered the petitioner to serve 58 and 60 days respectively before being returned to probation.  In May 2016, the petitioner pleaded guilty to one count

---

[1]     Because whether the petitioner was serving a sentence of community corrections or of probation being supervised by community corrections is at issue in this case, we will refer to the proceeding at issue simply as the revocation hearing.

of evading arrest, and the trial court imposed a two-year sentence to be served on probation and to be served consecutively to the eight-year sentence.

In July 2017, the petitioner again violated the terms of his probation, and the trial court ordered the petitioner to serve 150 days, after which the petitioner would be returned to probation with the special condition that the petitioner "'serve the sentence under the supervision of the Community Corrections Program for a period of 10 year(s).'" The trial court's order included the statement that the remainder of the petitioner's "'sentence was transferred to Community Corrections'" and that the petitioner was "'on original terms.'" In December 2017, a violation warrant issued, alleging that the petitioner violated the terms of his supervision by failing to report, failing to abide by curfew, failing drug screens, and failing to obtain in-patient drug treatment. An amended warrant issued in June 2018, alleging that the petitioner had garnered a new arrest for unlawful possession of drug paraphernalia. At the November 14, 2018 revocation hearing, the trial court found that the petitioner had violated the terms of his supervision and ordered him to serve the balance of his sentence in confinement.

On December 4, 2018, the petitioner filed a pro se pleading that was not included in the record but was apparently styled as a notice of appeal but having the substance of a post-conviction petition. After the appointment of counsel and by the agreement of the parties, the pro se filing was deemed a petition for post-conviction relief, and the petitioner abandoned his appeal of the trial court's revocation order. The petitioner filed an amended post-conviction petition, alleging that he was deprived of the effective assistance of counsel in preparation for and during the revocation hearing of November 2018.

At the November 2019 evidentiary hearing, the petitioner's first revocation counsel testified that he was appointed to represent the petitioner for proceedings on an alleged violation of community corrections. He testified that he had "quite extensive" communication with the petitioner, through in-person meetings and letters. Much of their communication involved discussions of the number of days of jail credit petitioner had earned on his sentence. He recalled that the petitioner "was particularly interested" in receiving credits for time he spent in a rehabilitation facility. Counsel stated that he relayed to the petitioner all offers or replies from the State. At some point before the revocation hearing, counsel withdrew from representation, in part, because the petitioner "just didn't like the State's response. He wanted something that the State wasn't willing to give." First counsel spoke with the petitioner's second revocation counsel, and handed over his file, including copies of several letters that he had written to the petitioner. One of the letters "in particular . . . laid out the pertinent current . . . position of the case." At the time that first counsel withdrew from representation, the State had indicated that the petitioner had

"'gone to the well once too many times'" in negotiations of a settlement and that the petitioner could either "'[t]ake it or leave it'" regarding a settlement offer.

Three letters from first counsel to the petitioner were exhibited to counsel's testimony. The first letter, dated July 23, 2018, addressed the petitioner's "two major misunderstandings of [his] current position." As to the amount of time the petitioner could be ordered to serve if found in violation of the terms of his release, counsel's letter stated:

> First, at one point you say that you have "about 8 years built on your 10 year sentence." That is not near the case. . . . The sentences in [five prior] cases expired in April 2012. So, you started serving the 8-year sentence . . . on probation on April 28, 2012 by my reckoning. So, you have only been on that probation for 6 years. But, as you know, you do not get "street" time for probation. So, if the judge orders you to serve the balance of that sentence, you will serve 8 years (not just 2) less time served. The fact that your supervision was transferred to community corrections does not necessarily change that. And, of course, you have the other 2-year sentence on top of that.

Counsel's first letter also addressed the number of credits the petitioner had earned:

> Second, . . . you mentioned elsewhere that [you] have around 4 years of jail time combined on your sentence. That is also not nearly true. As far as jail time itself is concerned, since this sentence went into effect, you have only be[en] in jail about 324 calendar days . . . . Time you spent in jail before 2014 went to satisfy [prior] cases.
>
> So, you need to understand where you stand as far as what is left on your sentence. You have an effective 10-year sentence (8 years plus 2 years). As of your hearing date in September, you will have about 324 calendar days of jail credit against that sentence. If the court revokes probation and orders you to serve the balance of your sentences, you will serve the 10-year sentence minus the 324 calendar days of credit.

In the second letter to the petitioner, dated September 19, 2018, first counsel stated that the State agreed to credit the petitioner 30 days against the two-year sentence for the time the petitioner spent in rehabilitation. The letter went on to explain in detail the offer from the State:

Your deal is that you will waive a hearing and admit that you are in violation. The 8-year sentence . . . will be deemed satisfied. In and of itself, that is a huge concession by the State. That sentence didn't commence until April 2012, so even if you perfectly did probation, you have 1-1/2 years left on that sentence. If the State pushed the issue, they could make you serve the balance of that sentence and you only have 324 calendar days of credit against it, so you would have 7 more years to flatten that 8 years.

Then there's the 2-year consecutive sentence . . . . Your agreement is to serve that sentence. Since this is the trailing sentence, by rights, any and all credit (including rehab credit that you really aren't entitled to by law) ought to go against . . . that 8-year sentence. But, for whatever reason, the State is willing to let that 30 days go against the 2-year sentence.

First counsel's third letter to the petitioner, dated September 25, 2018, stated that because the petitioner could not reach an agreement with the State, noting that the petitioner "want[ed] 134 days credit, [but] the State is only willing to grant 30 days," "we have no choice but to have a revocation hearing and see what the judge does with the entire 10 year effective sentence."

During cross-examination, first counsel explained that the offer from the State was that "the State would deem the eight-year sentence satisfied," and the petitioner would serve the consecutive two-year sentence. Counsel explained that the petitioner wanted the State to agree to give him approximately 134 days' credit on his two-year sentence, which counteroffer the State would not accept. Counsel stated that he explained to the petitioner the exposure he faced if he chose to have a hearing on the matter, including that the petitioner "had not accumulated very many actual calendar days' credit against that eight-year sentence" and that the State's willingness to deem the eight-year sentence satisfied was a good offer. Counsel further stated that, upon the petitioner's rejection of the offer and insistence that the State credit him 134 days on the two-year sentence, the State rescinded the offer.

Second revocation counsel, appointed to represent the petitioner upon first counsel's withdrawal, testified that he represented the petitioner for alleged violations of community corrections. He stated that he received documentation from first counsel related to the petitioner's case and that he reviewed the first and third letters from first counsel to the petitioner, but he did not specifically recall the second letter. Second counsel

-4-

said that, after reviewing the record on the petitioner's case, he contacted the State to determine if "there was any chance to change the offer." At that time, the State re-extended the original offer that called for an effective two-year sentence to serve. Second counsel stated that he discussed the State's plea offer with the petitioner, and the petitioner indicated that he believed that he should receive additional days of credit on the two-year sentence. The State again rejected the petitioner's request for additional credit and "indicated that a hearing was probably the likely outcome."

Second counsel said that he was prepared to have a hearing if the petitioner did not accept the State's offer and that he met with the petitioner to discuss the hearing. He could not recall the specifics of his conversations with the petitioner and specifically did not remember what he had told the petitioner regarding the amount of time he would be required to serve if ordered to execute his sentence. Second counsel stated, however, that he "probably would have deferred to" the information and advice contained in first counsel's letters to the petitioner.

During cross-examination, second counsel stated that he had concluded that the information contained in first counsel's letters was accurate as to the number of credits to which the petitioner was entitled and that he relayed that information to the petitioner. Counsel said that upon relaying to the State the petitioner's counteroffer to apply a certain number of jail credits to the two-year sentence, the State again revoked the offer and said, "'We're just going to have a hearing.'" He stated that the petitioner seemed to understand everything counsel discussed with him, including his possible exposure at a hearing.

The petitioner testified that he received three letters from first counsel. He corresponded with first counsel by letter, but he did not speak with first or second counsel about the content of first counsel's letters. The petitioner stated that second counsel met with him only once before the revocation hearing, at which time second counsel "[v]aguely" discussed the petitioner's situation with him. The petitioner calculated that 45 days elapsed between the time first counsel withdrew from representation and the revocation hearing. The petitioner said that, in his view, his sentence expiration date "was the most important part."

The petitioner stated that he tried to get first counsel to explain to him whether the 134 days of credit that he believed he had earned applied to the eight-year sentence or the two-year sentence. He also asked first counsel whether the time that he had completed on probation applied to his sentence. The petitioner said that it was his understanding that because his probation was transferred to community corrections, the time he had completed on probation would apply to his community corrections time and that his sentence expiration date would not be extended by a transfer to community corrections. The petitioner said that, through letters, first counsel assured him "that's

-5-

what's going to happen." The petitioner stated that, after he failed a drug screen, first counsel told him that he had violated the terms of his release but that the State had offered to deem the eight-year sentence satisfied and allow the petitioner to serve the two-year sentence with 30-days of credit from the petitioner's time in a rehabilitation program.

The petitioner stated that when second counsel began representation, the petitioner asked him if he knew that the petitioner was on community corrections rather than probation, and counsel responded "That's right. . . . You're on community corrections." The petitioner also claimed that second counsel assured him that his eight-year sentence would expire in April 2019 "[n]o matter what . . . because you're on community corrections." The petitioner said that second counsel told him that, should the trial court revoke his community corrections placement and order him to execute his sentence, his eight-year sentence would expire in April 2019, at which time he would begin serving his two-year sentence. The petitioner also said that second counsel explained to him that he was "looking at about a six or seven-month difference" between accepting the State's offer and being ordered to serve his sentence at a hearing. The petitioner added that second counsel acknowledged that he had never worked on a community corrections case before.

The petitioner acknowledged that he was seeking approximately 100 days of credit beyond what the State was offering. The petitioner insisted that he believed he risked serving only an additional four to seven months by rejecting the State's offer because second counsel assured him that his two-year sentence would begin April of 2019 "[n]o matter what." After the court ordered the petitioner to execute his sentence, the petitioner asked second counsel how many days of credit he was given, and counsel told him that he would contact him later at the jail. The petitioner later learned that his sentence was not set to expire until January 2027. The petitioner stated that, had counsel explained that he could be ordered to serve most of the eight-year sentence in addition to the two-year sentence, he would have accepted the State's offer.

During cross-examination, the petitioner acknowledged that he knew that he had a 10-year effective sentence, but he reiterated that neither of his attorneys had explained to him that his sentence expiration date could change if he was ordered to execute his sentence. The petitioner acknowledged that he had previously been ordered to serve a 12-year sentence following the revocation of his probation in an unrelated case, but he asserted that the trial court accredited him all of the time that he had earned in that case. The petitioner said that, although first counsel addressed some issues regarding jail credits in his letters, the petitioner never had an opportunity to discuss the matter with first counsel in person. The petitioner said that he knew that he was entitled to some credits on his sentence but that he did not know exactly how many or to which sentence they applied and that he "was actually trying to find out the details by the law" where the credits applied.

-6-

The petitioner stated that second counsel relayed to him the State's offer with the same terms. The petitioner asked second counsel whether he was eligible for certain jail credits, but before the petitioner received clarification on how jail credits would apply to his sentences, the State rescinded the offer, and the petitioner had a hearing on the matter. The petitioner stated that he received no credits toward his sentence at the hearing. The petitioner maintained that, although his suspended sentence began as probation, the sentence "got switched" to community corrections. He reiterated that had second counsel properly advised him about the implications of being ordered to execute his sentence, he would have accepted the State's offer. The petitioner asserted that he had not rejected the State's offer but instead had simply not yet accepted because he was trying to discuss with counsel the details of the offer and what jail credits he was entitled to.

On redirect examination, the petitioner stated that first counsel left a meeting and moved to withdraw after the petitioner asked to see the law addressing jail credits so that he could see for himself how many days of credit to which he was entitled. He reiterated that when he asked second counsel about the matter of jail credits, second counsel assured him that if the court ordered him to serve his eight-year sentence, that sentence would expire in April 2019 as originally scheduled.

In its written order denying post-conviction relief, the post-conviction court concluded that the petitioner was not entitled to post-conviction relief on the basis of ineffective assistance of counsel because, even if second counsel had advised the petitioner based on an inaccurate calculation of the time remaining on his sentence, the petitioner had failed to show that he was prejudiced. The post-conviction court did not make an explicit determination of whether the petitioner was serving a sentence of community corrections or a sentence of probation that was merely supervised by community corrections, but the court found that, at the revocation hearing, the petitioner was not resentenced but was instead "ordered to serve his original sentence."

In this timely appeal, the petitioner contends that he was deprived of the effective assistance of counsel at the hearing revoking his sentence of community corrections, arguing that second counsel failed to explain the ramifications of rejecting the State's offer. The State argues, first, that the issue is not cognizable in a post-conviction proceeding because the petitioner was serving a probated sentence that was merely supervised by community corrections. Alternatively, the State contends that the trial court did not err by denying post-conviction relief.

As an initial matter, we must first determine whether the petitioner was serving a sentence of probation or a sentence to community corrections at the time of the revocation hearing because individuals sentenced to probation do not enjoy the same

benefits as those sentenced to a community corrections placement. One such benefit, which was of particular importance to the petitioner, is the ability to build "street" time. *See* T.C.A. § 40-36-106(e)(4). "[A] defendant whose probation is revoked is not entitled to credit toward the sentence for time on probation, while a defendant whose community corrections sentence is revoked is entitled to credit toward the sentence for time spent in community corrections prior to the revocation." *Carpenter v. State*, 136 S.W.3d 608, 612 (Tenn. 2004). Another such benefit is the ability to pursue post-conviction relief following the revocation proceeding. "[T]he issue of ineffective assistance of counsel in a revocation of a community corrections sentence may be raised in a post-conviction proceeding," *Carpenter*, 136 S.W.3d at 612, but "the Tennessee Post-Conviction Procedures Act does not permit the filing of a petition under its provisions to attack collaterally the validity of a proceeding to revoke the suspension of sentence and/or probation," *Young v. State*, 101 S.W.3d 430, 433 (Tenn. Crim. App. 2002). At issue in this case is Code section 40-36-106(f), which allows a trial court to "permit[] an eligible defendant to participate in a community-based alternative to incarceration as a condition of probation in conjunction with a suspended sentence." T.C.A. § 40-36-106(f). Offenders thus sentenced are serving a sentence of probation and are not entitled to the benefits of a community corrections sentence.

The petitioner acknowledges that his sentences were originally imposed as sentences of probation but argues that, following the July 2017 revocation of his probation, his sentence was converted to a community corrections sentence. Although a trial court may, upon the revocation of a sentence of probation, "resentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by chapter 36 of this title," *see* T.C.A. § 40-35-310(b), nothing in the record indicates that the trial court actually resentenced the petitioner following the July 2017 revocation. The post-conviction court did not make an explicit finding relative to the nature of the petitioner's sentence but did observe that, after the petitioner's July 2017 probation violation, the trial court returned the petitioner to probation and ordered him to "serve the sentence under the supervision of the Community Corrections Program." This language indicates that the trial court merely transferred the supervision of the petitioner's probation to the community corrections program under the terms of Code section 40-36-106(f) and did not convert his sentence to a community corrections placement. Our conclusion that the petitioner was serving a sentence of probation at the time of the revocation proceeding at issue in this case is further bolstered by first counsel's first letter to the petitioner, which explained in detail that the petitioner was still serving a term of probation at the time of the revocation proceeding and that the petitioner could be ordered to serve the entire effective 10-year sentence, less only jail credits, if the trial court revoked his probation. The petitioner presented no evidence to contradict first counsel's conclusions. Moreover, the petitioner failed to exhibit to the hearing any of the underlying trial record and specifically did not include the order from the trial court transferring the supervision of the petitioner's

sentence to community corrections. In consequence, we must assume the post-conviction court's representation of the trial court's order was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993).

Because the petitioner was serving a sentence of probation supervised by community corrections and because "the Post-Conviction Procedures Act . . . does not provide a cause of action for a collateral attack on a probation revocation proceeding," *Young*, 101 S.W.3d at 430-31, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE